## MASTEN v. HUNT et al.

(Circuit Court, D. Massachusetts. June 29, 1892.)

1. PATENTS FOR INVENTIONS—CONSTRUCTION OF CLAIM—COMBINATION.
    Letters patent No. 321,833, issued July 7, 1885, to Cornelius E. Masten for a firecracker, covers, in claim 1, "the match, B, and fuse, C, in combination with the solid plug, D, and body, A, substantially as set forth." The specifications make no reference to the prior state of the art, and merely state that the invention produces "a more desirable article" "than is now in ordinary use," without particularizing the points constituting the improvement. Held, that the presumption of novelty applies to the combination as a whole, and, in the absence of evidence as to the prior state of the art, the court has no power to declare that the match, B, or its equivalent, was not essential, and to hold that a like cracker, with a continuous fuse, is an infringement.

2. SAME.
    The use of the conjunction "and" between the words "match, B," and "fuse, C," does not show that the match and fuse constitute but one element, of which a continuous fuse would be the equivalent.

In Equity. Suit by Cornelius E. Masten against Edmund S. Hunt et al. for infringement of letters patent No. 321,833, issued July 7, 1885, to complainant for a firecracker. Bill dismissed.

The specification and claim of the patent are as follows:

Be it known that I, Cornelius E. Masten, of Boston, in the county of Suffolk, state of Massachusetts, have invented a certain new and useful improvement in firecrackers, of which the following is a description sufficiently full, clear, and exact to enable any person skilled in the art or science to which said invention appertains to make and use the same. reference being had to the accompanying drawing, forming a part of this specification, in which the figure is a vertical longitudinal section.

My invention relates more especially to large firecrackers, or the class known as "cannon crackers;" and it consists in a novel construction and arrangement of the parts, as hereinafter. more fully set forth and claimed, by which a more desirable article of this character is produced than is now in ordinary use. The nature and operation of the improvement will be readily understood by all conversant with such matters from the following explanation, its extreme simplicity rendering an elaborate description unnecessary: In the drawing, A represents the body of the cracker, B the match, and C the fuse. The body is cylindrical in form, and is composed of layers of strong, tough paper overlapping each other, and cemented together in the usual manner. The match is composed of cotton, powder, and gum, the cotton being saturated with a solution of the gum, and then rolled in powder, or the powder rubbed into it and dried. The fuse is composed of a short cord or twist of ordinary touch-paper, into the inner end of which the outer end of the match is inserted and secured, as seen at x. The breech plug, D, of the cracker consists of fire clay; and is inserted in the body around the fuse and match as follows: The fuse and match having been first united, as shown and described, the fuse is inserted in a vertically-arranged hole in the center of an anvil or stake, which fits closely into the lower end, d, of the body. This stake is provided with a rabbet or shoulder on which the end, r, of the body rests; the body standing vertically with the match in its center when the stake is inserted. Powdered fire clay, or similar material, of proper temperament, is then introduced around the match through the open upper end of the body, and rammed down to form the solid plug, D, by means of a hollow ramrod, which is adapted to pass freely over the match. The body is

(No Model.)

# C. E MASTEN.
## FIRE CRACKER.

No. 321,833.

Patented July 7, 1885.

Witnesses
Philip F. Corbett
L. J. White

Inventor
Cornelius E. Masten
Per C. C. Shaw
Attorney

then filled with the charge of explosive compound, E, and the wad of the muzzle plug inserted. This plug consists of a cylindrical shell, H, open at both ends, and adapted to fit closely into the body, the shell being provided with a centrally disposed plug, M, composed of fire clay, or similar material, which is rammed in solid before the shell is inserted. The shell, H, is composed of layers of paper overlapping each other, and properly cemented together, and is secured in the body, A, by means of glue or cement. In firecrackers of this character the muzzle plug or wad is usually rammed down onto the charge or filling with sufficient force to secure the wad firmly in the body of the cracker, thereby, on account of the nature of the filling, greatly reducing the force of the explosion, and causing it to produce far less noise than when the plug is loosely inserted, and cemented into the body, as described.

Having thus explained my invention, what I claim is: (1) In a firecracker, the match, B, and fuse, C, in combination with the solid plug, D, and body, A, substantially as set forth. (2) The improved firecracker herein described, the same consisting of the body, A, fuse, C, match, B, plug, D, shell, H, plug, M, and filling or charge, E, constructed, combined, and arranged to operate substantially as described.

*J. S. Richardson* and *Charles C. Morgan*, for complainant.
*Maynadier & Beach*, for defendants.

PUTNAM, Circuit Judge. This case arises on the first claim in complainant's patent, and the only defense alleged at the argument was noninfringement. This defense, however, involves the construction of the claim in question, as the defendants are manufacturing the article described by it, except only that they use a continuous safety fuse instead of the "match, B," and the "fuse, C." It seems to me that to restrain respondents in this cause, would give complainant a monopoly of all so called "cannon crackers" in the manufacture of which a clay plug is forced into the body of the cracker after the body has been "cemented together in the usual manner." If he was entitled to ask from the patent office so much as this, his specifications and claims fail to show it. The specifications make no reference to the state of the art, and do not particularize in what respects complainant's combination was an improvement, using, in reference to this, only the general language that by the invention a more "desirable article" is produced "than is now in ordinary use." Therefore there is nothing on the face of the patent from which the court can infer that any element in the combination is more or less essential or important than any other. Complainant claims that the conjunction between the words "match, B," and "fuse, C," shows that the match and fuse make but one element, and that, therefore, by the terms of the patent, they are the equivalent of a continuous fuse; but the presumption raised by this collocation is too weak to safely guide the court. The presumption of novelty in this case applies only to the combination as a whole, and does not apply to any of its elements. Neither party has shown to the court, by proper proof, the state of the art prior to complainant's invention. I am satisfied that Exhibits Perigo and Perigo 2, that is, the Chinese crackers, were constructed by rolling in the clay plug, and not in the method described in

complainant's specifications; but this fact is merely negative in its effect, as it is limited to these particular exhibits, and does not inform the court whether or not other crackers of different construction were on the market. James Shepard (page 31, answer 10, and page 34, answer 19) concludes that certain elements in complainant's cracker are new; but he does not qualify himself as one having historical knowledge or information about this particular trade, and his method of reaching his conclusion as to the construction of Exhibits Perigo and Perigo 2 indicates that he could not. In *McDonald* v. *Whitney,* 24 Fed. Rep. 600, the combination was expressly described in the claim as embracing four rolls; but, either from the face of the patent or from other matters in the record, the court was able to conclude that the gist of the invention in issue was "the separation and adjustment of the rolls, held together by spring pressure, by means of a treadle and levers;" and the court, therefore, enjoined a machine with only three rolls. There may also be other conditions under which a patentee may be enabled to meet the effect of an unnecessary subdivision in his claim of the elements of his combination; but, in the absence of the matters stated in this opinion as not appearing in this case, it seems to me I have no power to pronounce any element more or less essential than others, or to declare that any division or subdivision appearing on the face of the claim is unimportant, or that the gist of the invention is in a new method of combining the clay plug with the body of the cracker, or, for that or for any other reason, to decide that any manufacture is an infringement, unless it combines with the rest the "match, B," or the equivalent of that precise element.

In applying the law to the facts in this record, I am guided by the results in *Vance* v. *Campbell,* 1 Black, 427; *McClain* v. *Ortmayer,* 141 U. S. 419, 12 Sup. Ct. Rep. 76; and *Dryfoos* v. *Wiese,* 124 U. S. 32, 8 Sup. Ct. Rep. 354,—more than by that in *Machine Co.* v. *Lancaster,* 129 U. S. 263, 9 Sup. Ct. Rep. 299.

The latter case, however, cites (page 280, 129 U. S., and page 305, 9 Sup. Ct. Rep.) the ruling of Vice Chancellor Wood as follows:

"When the thing is wholly novel, and one which has never been achieved before, the machine itself which is invented necessarily contains a great amount of novelty in all its parts; and one looks very narrowly and very jealously upon any other machines for effecting the same object, to see whether or not they are merely colorable contrivances for evading that which has been before done. When the object itself is one which is not new, but the means only are new, one is not inclined to say that a person who invents a particular means of doing something that has been known to all the world long before has a right to extend very largely the interpretation of those means which he has adopted for carrying it into effect."

The difficulty in the present case is that, as already pointed out, the complainant does not show by his specifications, or the proofs, whether the "object itself" is new in any essential particular, as, for example, whether a body constructed like this with a clay plug pressed into it is novel. To paraphrase the supreme court in the same case (page 273, 129 U. S., and page 302, 9 Sup. Ct. Rep.) the complainant does not show

whether or not the invention is one of a "primary character," to which the doctrine of equivalents applies to its full extent, or whether or not the inventor was a "mere improver" upon something "capable of accomplishing the same general result;" in which latter case, the court said, "his claims would properly receive a narrower interpretation."

Again, in *McClain* v. *Ortmayer*, *supra*, the supreme court, on page 425, 141 U. S., and page 78, 12 Sup. Ct. Rep., laid down the following rule:

"The principle announced by this court in *Vance* v. *Campbell*, 1 Black, 427, that, where a patentee declares upon a combination of elements which he asserts constitute the novelty of his invention, he cannot, in his proofs, abandon a part of such combination and maintain his claim to the rest, is applicable to a case of this kind, where a patentee has claimed more than is necessary to the successful working of his device."

This does not strictly govern the case at bar; but it illustrates clearly that it does not follow that the complainant can abandon "match, B," as a distinct element, and claim a continuous fuse as the equivalent of his fuse and match, merely because he has made a subdivision which it may prove was not "necessary to the successful working of his device." Although in this opinion I have not only pointed out the negative nature of the complainant's specifications, but have also referred to the lack in the record of any proof of the state of the art prior to the invention in question, yet I do not mean to be understood as now holding that any such proof would have enabled me to reach a different conclusion. In view of what appears, or rather fails to appear, on the face of the patent, I have not considered whether any line of proofs would relieve the complainant, and I have referred to the lack of them merely because it strengthens the case as presented to me. Let respondents draw a decree of dismissal, with costs, and submit it to the court, with proof that it has been served on the complainant.