PAXTON et al. v. BRINTON et al.

(Circuit Court, E. D. Pennsylvania. February 25, 1901.)

No. 26.

1. PATENTS—CONSTRUCTION OF CLAIMS.

A clause in a specification of a patent which was clearly intended to relate to one claim of the patent only, and was so understood by the patent office, cannot be construed as a limitation of the other claims.

2. SAME—INFRINGEMENT—KNITTING MACHINES.

The Paxton and O'Neill patent, No. 521,218, for a fashioning device for circular knitting machines, construed, and *held* not anticipated and valid. Claims 1, 2, 3, and 4 also *held* infringed.

In Equity. Suit for infringement of a patent. On final hearing.

Fraley & Paul, for complainants.

John R. Nolan and Joshua Pusey, for respondents.

DALLAS, Circuit Judge. The bill of complaint alleges infringement of the first four claims of patent No. 521,218, dated June 12, 1894, issued to John B. Paxton and Ellis I. O'Neill, for "fashioning device for circular knitting machines." These claims are as follows:

"(1) The combination with the needle cylinder, the cam cylinder, and actuating mechanism for said cam cylinder, of a rotatable needle shifter, capable of movement in the direction of its axis of rotation, and actuating mechanism arranged with reference to said needle shifter, substantially as set forth, whereby movement of the needle shifter in a direction coincident with said axis is derived from the rotation caused by engagement with and passage by the needle hub. (2) The combination with the needle cylinder, the cam cylinder, and actuating mechanism for said cam cylinder, of a rotatable needle shifter, capable of movement in the direction of its axis of rotation, and a cam having an incline arranged with relation to said needle shifter, substantially as set forth, whereby movement of the needle shifter in the direction of said axis is derived from the rotation caused by engagement with and passage by the needle hub. (3) The combination with the needle cylinder, the cam cylinder, and actuating mechanism for said cam cylinder, of a post carried by the cam cylinder, a needle shifter mounted to rotate and slide longitudinally on said post, a cam having an incline arranged with relation to said needle shifter, substantially as set forth, whereby sliding movement of the needle shifter upon the post is derived from its rotation thereon, and vice versa, and a spring normally tending to throw the needle shifter in a direction opposite to the cam incline. (4) The combination with the needle cylinder, the cam cylinder, and actuating mechanism for said cam cylinder, of a post carried by the cam cylinder, a needle shifter mounted to rotate and slide longitudinally thereon, a cam having an incline arranged with relation to said needle shifter, substantially as set forth, whereby sliding movement of the needle shifter upon the post is derived from its rotation thereon, and vice versa, and means, substantially as set forth, whereby said needle shifter may be secured in different relations to the needle cylinder to throw the shifting devices into or out of operative position."

The only defense that has been urged is that "in view of the prior state of the art, and of certain statements in the nature of disclaimers contained in the patent, the claims must receive a very narrow construction to be valid at all, and, so construed, the defendants' structure does not infringe"; and the controlling question appears to be whether the claims in suit should be so construed as to cover only those structures in which the "actuating mechanism" (first claim)

and "cam having an incline" (second, third, and fourth claims) are independent of the cam wall. That no such limitation is expressed seems to be conceded, and, I think, is manifest. Does the patent, when read as a whole, or the prior state of the art, call for its imposition?

1. I understand, from the testimony of the defendants' expert and the argument of their counsel, that their contention respecting the ·effect of the patent itself is based upon the fact that the specification, which is referred to in each claim, contains this statement:

· "By entirely cutting away the cam wall upon each side of and adjacent to the knitting cams we obtain a twofold advantage of not only providing the required space for the necessary adjustment of the cam bases and cam tops just mentioned, but avoid frictional engagement between the wall of the cam cylinder and the needle-lifting and needle-depressing arms. Where, as in some cases, the wall of the cam cylinder is slotted, and the faces of the slots are made to act as bearing surfaces for the actuation of the needle-lifting and needle-depressing devices, the wear of the bearing surfaces is liable to seriously interfere with the proper action of the parts; for it is, of course, essential that the bearing surfaces shall be true, and, as far as possible, permanent. In our invention the bearing surfaces which co-operate with the needle-lifting and needle-depressing arms are independent of the cam wall, easily replaceable, and readily adjustable."

If this clause of the specification had been intended as a disclaimer or a narrowing description, affecting all the claims of the patent, it would scarcely be possible to avoid accepting the defendants' position. But it was not so intended. It was not included in the application as originally presented, and it had not been inserted at the time the claims in controversy were allowed. The only presently material point that was made by the patent office respected the sixth claim, which was expressly and distinctly limited as the defendants contend · the first four claims should be construed to be; and to that particular claim the language under consideration especially referred and was peculiarly applicable. Therefore it ought not now to be related to the first four claims, because it is plain from the whole transaction that when it was inserted the parties inserting were looking only to the sixth. Reece Buttonhole Mach. Co. v. Globe Buttonhole Mach. Co., 10 C. C. A. 194–203, 61 Fed. 958–967; Heap v. Greene, 34 C. C. A. 86–88, 91 Fed. 792–794. When the patent office rejects a claim on its merits, or requires amendment as a condition of allowance, and its action is acquiesced in, the applicant is precluded from afterwards asserting any construction which is not in accordance with the terms upon which it thus appears that his patent was granted and accepted. But, "to be estopped by the action of the patent office, the patentee must be shown to have surrendered something which he now claims, in order to obtain that which was allowed." This familiar principle was declared in Bundy Mfg. Co. v. Detroit Time-Register Co., 36 C. C. A. 375–394, 94 Fed. 524–543; and the decision of Judge Wheeler in Roemer v. Peddie (C. C.) 27 Fed. 702, cited for defendants, does not depart from it. It is clear from what has been said that nothing whatever was surrendered in order to obtain any of the claims which are now sued on; and that the part of the specification thus far referred to was not intended to limit those claims is made further apparent by its concluding portion, in which it is said:

"Upon a consideration of the types of our invention described in the foregoing specification, it will be obvious that they all have in common a characteristic principle of operation, viz. that a rotatable arm, so mounted as to be free to move in a direction coinciding with the axis of its rotation, is combined with guiding devices which compel such movement in the direction of the axis of rotation whenever the arm is rotated. We thus obtain the needle-shifting action by a movement which is the derivative of the rotation of the arm caused by its engagement with the needle hub in the act of passing by the same. While, therefore, we have specified the preferred methods of effecting this derivative movement, we do not limit ourselves to the use of the specific devices shown for effecting it, the only essential being that there should be in combination with a rotatable arm, having the capacity to move in the direction of its axis of rotation, mechanism which is capable of modifying what otherwise would be a mere movement of rotation, and obtaining a resultant movement in what may be appropriately termed a 'spiral path.' * * * So far as we are aware, we are the first to combine a rotatable shifter, having a capacity for movement in the direction of its axis sufficient to be operative for shifting purposes, with actuating devices whereby the necessary resultant movement is obtained."

This language needs no interpretation. It plainly shows that though the applicant limited one of his claims, not here involved, he had no thought of putting the same limitation upon all of them. If such had been his intention, his expressly limited claim would have been superfluous; and, if the patent office had so understood his application, the presumption is that it would not have allowed that claim.

2. Complainants' counsel concede that prior to the invention in question there had been devices for narrowing, and in turn widening, a fabric in course of knitting, by throwing the end needles, for the time being, one at a time, out of operative position, to narrow; and similarly to return them to that position, to widen. But they insist that the prior art discloses nothing which calls for the restrictive construction of the claims in suit which the defendants invoke; and, in my opinion, the proofs sustain this contention. The complainants' expert testified:

"I have carefully examined the Salisbury patent referred to, and I do not find therein any device which is intended to effect a fashioning operation, or any device which could be used for that purpose."

After investigation of that patent, and of the other evidence with respect to it, I adopt this statement, and I think it sufficiently disposes of the patent to which it relates. The Hirner patent shows a construction which is seemingly more like that of the present one, but it essentially differs from it. It does not effect a movement of the needle shifter in a direction coincident with its axis, caused by an engagement with the needle hub. It may be conceded that, as testified by defendants' expert, it might be so altered as to do this, but the change which he admits would be necessary would quite transform the Hirner organism, and introduce a mode of action which Hirner certainly did not have in mind or suggest to any one else; and the question is, not what can be done now, but what was disclosed then. Several other patents have been adduced by the defendants, but they need not be discussed in detail. Taken separately or together, they, for the present purpose, add nothing to the Salisbury and the Hirner, which appear to be mainly relied upon. Considera-

tion of all the evidence has convinced me that the especial means devised by Paxton and O'Neill for effecting the fashioning operation were new and original with them, and nothing has been shown which, in my judgment, would warrant the court in holding that the scope of their invention was not co-extensive with the terms of their claims.

Other points have been argued, but I deem their discussion unnecessary. Enough has been said to show that the complainants are entitled to a decree, and such decree may be prepared, and, if requisite, submitted for settlement.